IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CAG FOOD SERVICES, LLC, f/k/a
CORRECTIONAL ADVISOR'S GROUP, LLC,

    Plaintiff,

                v.

SHAVER FOODS, LLC,

    Defendant.

Civil Action No.
1:18-cv-02753-SDG

## ORDER

This matter is before the Court on Plaintiff's Partial Motion to Dismiss Defendant's Counterclaim [ECF 41]. For the reasons stated below, the motion to dismiss Count I of Defendant's Counterclaim is **GRANTED**. The motion to dismiss Count III of Defendant's Counterclaim is **DENIED AS MOOT** given Defendant's withdrawal of that claim.

**I.    BACKGROUND**

    **a.    Factual Background**

This action arises out of a contractual dispute between Plaintiff CAG Food Services, LLC, f/k/a Correctional Advisor's Group, LLC and Defendant Shaver Foods, LLC. The following facts from Defendant's Counterclaim are accepted as

true for purposes of this motion.¹ Defendant markets, sells, procures, stores, consolidates, and ships food and food-related products to correctional facilities throughout the country.² In 2007, Defendant entered into an Original Supply Agreement ("OSA")³ with Plaintiff because Defendant believed Plaintiff could help it sell Defendant's product and distribution model to Plaintiff's food service contacts.⁴

According to Defendant, at the time the parties entered into the OSA, Plaintiff either had no contracts with third parties relating to the provisioning of food products, or it had one contract with Avalon Correctional Services.⁵ Therefore, Defendant claims its agreement with Plaintiff was not based on

---

1   *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1274 (11th Cir. 1999) ("At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."). *See also S. Coal Corp. v. Drummond Coal Sales, Inc.*, No. 1:17-CV-1104-AT, 2017 WL 7550765, at *1 n.1 (N.D. Ga. Nov. 15, 2017) ("On a motion to dismiss a counterclaim, the counterclaim's allegations must be taken as true.") (citing *Carpenter Paper Co. v. Calcasieu Paper Co.*, 164 F.2d 653, 656 (5th Cir. 1947)).

2   ECF 33, ¶ 3.

3   Defendant did not attach the OSA to its Counterclaim, but Plaintiff attached a copy to the Amended Complaint. ECF 22-1 (OSA). The Court may consider the OSA for purposes of this motion because it is incorporated by reference in Defendant's Counterclaim. Fed. R. Civ. P. 10(c).

4   ECF 33, ¶ 5.

5   *Id*. ¶¶ 6–7.

Plaintiff's existing contracts with third parties but on Plaintiff's promise that it could grow Defendant's business through its contacts and by "acting in a sales, customer service and support role for the existing [Defendant] product and distribution model."[6]

On or about July 30, 2008, the parties entered into an Amended Supply Agreement (the "ASA").[7] As with the OSA, the ASA was terminable at will by either party and provided that Plaintiff would receive a 5% commission on invoices for clients managed by Plaintiff.[8] In May 2018, after more than ten years of working together, Defendant terminated the parties' relationship.[9]

Defendant asserts that "[o]ne of the main business drivers underlying the [OSA] and the [ASA] was [Plaintiff]'s promise that it could grow [Defendant]'s long-term sales through [Plaintiff]'s contacts, relationships and experience."[10] Defendant claims that Plaintiff had success in doing so during the first half of the

---

[6] *Id.* ¶ 8.

[7] *Id.* ¶ 16. Like the OSA, the Counterclaim incorporates the ASA by reference and a copy was attached to Plaintiff's Amended Complaint. ECF 22-2 (ASA). Therefore, the Court may consider it. Fed. R. Civ. P. 10(c).

[8] *Id.* ¶¶ 17, 19; ECF 22-2, at 2.

[9] ECF 33, ¶ 25.

[10] *Id.* ¶ 34.

relationship but not during the second half.[11] According to Defendant, the "'value' [Plaintiff] provided to Defendant (if any) diminished, yet the cost of [Plaintiff]'s services did not."[12] Additionally, in 2017, Plaintiff "participated in the placement of corporate sales terms by an important [Defendant] customer known as Elior."[13] Defendant claims that Plaintiff misstated the payment terms when reporting the Elior order back to Defendant.[14] Due to this mistake, Defendant ended up having to pay Elior a $496,953.91 rebate.[15] Defendant also alleges that this mistake caused it to suffer "a substantial loss in goodwill and in employee productivity and time in trying to understand and rectify the error."[16]

### b. Procedural Background

On May 16, 2018, Plaintiff filed its original Complaint in the Superior Court of Cobb County.[17] On June 5, 2018, Defendant removed the case to this Court.[18]

---

[11] *Id.*

[12] *Id.* ¶ 36.

[13] *Id.* ¶ 38.

[14] *Id.* ¶ 39.

[15] *Id.* ¶ 40.

[16] *Id.* ¶ 41.

[17] ECF 1-1.

[18] ECF 1.

Plaintiff amended its pleading on July 3, 2018.[19] This Court has jurisdiction over the case based on diversity jurisdiction. 28 U.S.C. § 1332.[20]

On May 2, 2019, Defendant filed its Answer, Affirmative Defenses, and Counterclaims [ECF 33] to the Amended Complaint [ECF 22]. Defendant asserts the following counterclaims: (1) breach of contract (Count I); (2) trademark infringement and false designation of origins (Count II); and, attorneys' fees under O.C.G.A. § 13-6-11 (Count III).[21] On April 19, 2019, Plaintiff moved to dismiss Counts I and III of the Counterclaim for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). In response, Defendant withdrew Count III.[22] Accordingly, the Court will only address whether Defendant sufficiently alleged a breach of contract claim under Count I of its Counterclaim.

---

[19] ECF 22.

[20] ECF 1, at 2. Federal district courts have diversity jurisdiction over civil actions between citizens of different states where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The party seeking to invoke federal diversity jurisdiction under 28 U.S.C. § 1332 must prove that the claim meets the threshold jurisdictional amount of $75,000 by a preponderance of the evidence. *Wineberger v. RaceTrac Petroleum, Inc.*, 672 F. App'x 914, 916–17 (11th Cir. 2016) (citing *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003)). Defendant met this burden by providing evidence that the commissions and revenues at issue exceed $75,000. ECF 1, at 2–6.

[21] *Id.* at 29–33.

[22] ECF 43, at 4 n.1.

## II.     Legal Standard

### a.     Motion to Dismiss

To withstand a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F. 3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is plausible on its face when a plaintiff pleads sufficient factual content for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Am. Dental Ass'n*, 605 F. 3d at 1289 (citing *Twombly*, 550 U.S. at 556). "A complaint does not state a facially plausible claim for relief if it shows only a sheer possibility that the defendant acted unlawfully." *Waters Edge Living, LLC v. RSUI Indem. Co.*, 355 F. App'x 318, 322 (11th Cir. 2009). A complaint must also present sufficient facts to "'raise a reasonable expectation that discovery will reveal evidence' of the claim." *Am. Dental Ass'n*, 605 F.3d at 1289 (quoting *Twombly*, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)).

This principle, however, does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### b. Breach of Contract

Both parties assert that Georgia law controls this action. In Georgia, "[t]he essential elements of a breach of contract claim are (1) a valid contract; (2) material breach of its terms; and (3) damages arising therefrom." *Brooks v. Branch Banking & Tr. Co.*, 107 F. Supp. 3d 1290, 1295 (N.D. Ga. 2015). To survive a motion to dismiss, a plaintiff must "allege a particular contractual provision that the defendants violated." *Id.* at 1296. A plaintiff is prohibited from "only generally assert[ing] a breach of contract, without identifying any provisions or any specific agreements that were breached, nor excerpting any relevant portions of an agreement." *Estate of Bass v. Regions Bank, Inc.*, Nos. 17-13048, 18-12917, 2020 WL 284094, at *4 (11th Cir. 2020). In addressing whether a plaintiff sufficiently alleged a breach of contract claim, the Court may construe the allegations with the written terms of the contract. *Intellicig USA LLC v. CN Creative Ltd.*, No. 1-15-CV-01832-AT, 2016 WL 5402242, at *3 (N.D. Ga. July 13, 2016).

### III. DISCUSSION

After construing the ASA with Defendant's allegations, the Court finds that Defendant has failed to sufficiently allege Plaintiff breached a provision of the

ASA. Under Count I of its Counterclaim, Defendant asserts that it "overpaid [Plaintiff] over the life of the [ASA], because the amounts [Defendant] paid were not commercially reasonable and were not commensurate with the value that [Plaintiff] provided."[23] Next, Defendant alleges that Plaintiff "was required to provide a service of value to [Defendant]—customer service and support" and that Plaintiff failed to provide "any such value."[24] Finally, it alleges that Plaintiff caused Defendant "a substantial loss of time, productivity, and goodwill relating to its mishandling of a substantial order submitted by Elior."[25] Thus, Defendant's claim points to three alleged breaches by Plaintiff: (1) being overpaid; (2) failure to provide customer service and support; and, (3) mishandling the Elior order.

### a.     Overpayment

Regarding Defendant's claim that it overpaid Plaintiff, the Court agrees with Plaintiff that a breach of contract claim is not the appropriate method to save a party from a bad bargain. *William J. Cooney, P.C. v. Rowland*, 240 Ga. App. 703, 705 (1999) ("In general, parties should be entitled to contract on their own terms without the courts saving one side or another from the effects of a bad bargain;

---

[23]   *Id.* ¶ 45.

[24]   *Id.* ¶¶ 43–44.

[25]   *Id.* ¶ 46.

they should be permitted to enter into contracts that may actually be unreasonable or which may lead to hardship."). Defendant cannot bring a breach of contract claim because, in hindsight, it believes "the value [Plaintiff] provided to [Defendant] (if any) diminished, yet the cost of [Plaintiff]'s services did not."[26] Defendant agreed to pay Plaintiff the 5% commission.[27] Further, Defendant claims it could have terminated the agreement at any time.[28] As such, Defendant's breach of contract claim fails to the extent it is premised on its alleged overpayment for Plaintiff's services.

### b.   Customer Service and Support

Defendant has also not shown that Plaintiff breached a provision of the ASA by failing to provide customer service and support. Defendant claims in its response to Plaintiff's motion that Plaintiff was responsible for providing "account management services," including "assist[ing] with customer sales, assist[ing] with all matters pertaining to the placement of customer orders (including accurately communicating the terms of the sale to [Defendant] and the customer), and

---

[26]   *Id.* ¶ 36.

[27]   *Id.* ¶ 16 ("Both [Plaintiff] and [Defendant] participated in the drafting of the [ASA].").

[28]   *Id.* ¶ 17 ("Like the [OSA], the [ASA] does not contain a specified term and it is thus terminable at the will of either party.").

provid[ing] customer service and other necessary support."[29] In support of this argument, Defendant points to the following provision in the ASA:

> In exchange [Plaintiff] will receive a commission of 5% of the total amount paid for each future invoice by a client managed by [Plaintiff] within the purview of this supply agreement.[30]

Defendant reads the words "managed by" in this provision as obliging Plaintiff to provide account management services.[31]

The Court is not persuaded by Defendant's broad reading of the provision. First, the plain language says nothing about account management services or any management services to be provided by Plaintiff to Defendant. Second, standing alone, it might not be clear whether the "client" being managed is Plaintiff's or Defendant's client. However, when reading the language of the contract as a whole, it becomes clear that "managed by" refers to Plaintiff's management of its own clients, not Defendant's clients. O.C.G.A. § 13-2-2(4) ("[T]he whole contract should be looked to in arriving at the construction of any part.").

The first paragraph of the ASA states that it is setting forth the terms and conditions under which the parties "have agreed to operate for certain clients of

---

[29]  ECF 43, at 6.

[30]  ECF 22-2, at 2.

[31]  ECF 43, at 6.

[Plaintiff]."[32] It goes on to state that Defendant "will be the primary supplier of all foodservice food and food related products . . . to clients managed by [Plaintiff]."[33] However, it gives Plaintiff "the right to remove any client from the list of customers serviced by [Defendant]."[34] Thus, the benefit provided to Defendant through the ASA is that Plaintiff would hire Defendant to serve *Plaintiff's* clients and, "in exchange," Defendant would pay Plaintiff a 5% commission.[35]

Therefore, the language "client managed by [Plaintiff]" refers to Plaintiff's duty to manage its own clients, independent of the ASA and Plaintiff's relationship with Defendant. As Plaintiff notes, "this client management was part of [Plaintiff]'s ongoing efforts to maintain and service **its** clients to which [Defendant] was supplying products. This client management is not a contractual obligation [Plaintiff] had to [Defendant]."[36] The outside relationship that Plaintiff had with its own clients is why Defendant entered into an agreement with Plaintiff in the first place—Defendant believed Plaintiff would help Defendant grow by

---

[32] ECF 22-2, at 2.

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] ECF 46, at 4 n.1.

selling Defendant's product and distribution model through Plaintiff's contacts.[37] Defendant's insistence that Plaintiff had no independent client contracts when the parties entered into the OSA does not alter the Court's reading of the ASA. Regardless of when or if Plaintiff entered into separate contracts with its own clients, the agreement with Defendant was clearly made so that Defendant could benefit from Plaintiff's contacts and relationships within the industry.[38] Plaintiff's management of its own relationships was not subject to or governed by the ASA.

Accordingly, the provision relied on by Defendant does not support its claim that Plaintiff was obligated to provide account management services or customer service and support to Defendant. Further, the Court could not find any other provisions in the ASA that created such an obligation. Consequently, Defendant's breach of contract claim premised on Plaintiff's lack of customer support and service fails.

c. **Elior Order**

Finally, Defendant fails to point to any provision that was breached by the alleged mishandling of the Elior order. Nor can the Court, upon its own review of the ASA, find a provision that was breached by Plaintiff's purported misstatement

---

[37] ECF 33, ¶ 5.

[38] *Id.* ¶¶ 5, 34.

of the Elior payment terms. In its briefing opposing Plaintiff's motion to dismiss, Defendant quotes the ASA, stating, "[Plaintiff] set [Defendant] backwards by mishandling order guides, mishandling 'customized sales and delivery reporting and shipping documents,' mishandling communications, and causing a costly error with a major [Defendant] customer."[39] Defendant did not attribute its quotation to a specific provision of the ASA. However, a review of the ASA shows that it comes from a section imposing a duty on *Defendant*.[40] Defendant has failed to show how this section supports a finding that *Plaintiff* breached the parties' agreement.

The provision that arguably comes closest to obligating Plaintiff to provide correct order terms states that various order information "will be provided in a separate agreement customized for each client."[41] Defendant has not pleaded how

---

[39] ECF 43, at 13.

[40] ECF 22-2, at 3 ("At the request of [Plaintiff], [Defendant] is developing systems to allow secure online ordering, customized sales and delivery reporting and shipping documents reflecting [Plaintiff]'s role in these transactions.").

[41] *Id.* at 2 ("Order guides containing pricing, payment terms, minimum order quantities, order and delivery lead times will be provided in a separate agreement customized for each client to account for differences in storage, feeding population, freight density and funding parameters.").

deficiencies in the information provided in a separate agreement would create a breach under the ASA.

The Court finds that Defendant failed to adequately plead a provision of the ASA that was allegedly breached by Plaintiff. As a result, Defendant has failed to state a claim under which relief can be granted for Count I of its Counterclaim. Therefore, Plaintiff's motion to dismiss Count I of the Counterclaim under Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion to dismiss [ECF 41] is **GRANTED IN PART** and **DENIED IN PART AS MOOT**. The motion is **GRANTED** as to Count I of Defendant's Counterclaim, which is dismissed without prejudice. The motion is **DENIED AS MOOT** as to Count III, given that Defendant has withdrawn that claim. Plaintiff is **DIRECTED** to file an Answer as to Count II of Defendant's Counterclaim within twenty-one (21) days from the date of this Order.

**SO ORDERED** this the 17th day of March 2020.

Steven D. Grimberg
United States District Court Judge