# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

CAG FOOD SERVICES, LLC, f/k/a
CORRECTIONAL ADVISOR'S GROUP, LLC,

    Plaintiff,

             v.

SHAVER FOODS, LLC,
    Defendant.

Civil Action No.
1:18-cv-02753-SDG

## OPINION AND ORDER

This matter is before the Court on Defendant Shaver Foods, LLC's motions to strike Count I of Plaintiff CAG Food Services, LLC's Amended Complaint [ECF 102] and for summary judgment [ECF 107], and Plaintiff CAG Food Services, LLC's motion for leave to file surreply [ECF 129]. After careful consideration of the parties' briefing, and with the benefit of oral argument, the Court **GRANTS** Defendant's motion for summary judgment, **DENIES** Plaintiff's motion for leave to file a surreply, and **DENIES as moot** Defendant's motion to strike.

## I.  BACKGROUND

### A.  Undisputed Facts

The following facts are undisputed. Defendant Shaver Foods, LLC (Shaver) is a low-cost, institutional food distributor servicer that provides food to customers, including correctional facilities, schools, healthcare providers, senior

feeders, distributors, and manufactures.[1] In 2007, Shaver and Plaintiff CAG Food Services, LLC (CAG) entered into a supply agreement through which Shaver would supply CAG customers with food services.[2] In July 2008, the parties amended the agreement to make Shaver the primary food supplier to CAG's clients in exchange for CAG receiving a five percent commission "of the total amount paid" to Shaver for each future invoice of a client managed by CAG.[3] The agreement allowed the parties to create separate supply agreements with different terms for individual clients "based on various circumstances to be determined as they arise."[4] The agreement also prohibited Shaver from soliciting CAG clients or entertaining solicitations from CAG clients.[5]

On May 2, 2018, Ashley White, the President and CEO of Shaver, sent an email to CAG purporting to terminate the amended supply agreement "effective immediately."[6] Rich Adams, the President and CEO of CAG, responded on behalf of CAG, asserting that the amended supply agreement was "rock solid and

---

[1]   ECF 116, ¶ 2.

[2]   ECF 121, at 1; ECF 116, ¶ 2.

[3]   ECF 116, ¶ 4.

[4]   *Id.* ¶ 5.

[5]   *Id.* ¶ 6.

[6]   ECF 121, at 2; ECF 116, ¶ 9.

binding" and a "long term contract," which included Shaver sales to customers "past, present, and future."[7]

### B. Procedural History

On May 16, 2018, CAG filed suit in Superior Court of Cobb County, Georgia.[8] Shaver timely removed.[9] CAG initially sought a preliminary injunction, claiming that Shaver was in breach of the restrictive covenants of the amended agreement.[10] The Court denied CAG's motion for a preliminary injunction.[11] CAG subsequently amended its Complaint, asserting claims for (I) Breach of Contract (Past Commission); (II) Breach of Contract (April 2018 Commissions); (III) Breach of Contract (Commissions for May 2018 Forward); (IV) Unjust Enrichment (in the Alternative): (V) Tortious Interference with Contractual and Business Relations;

---

[7]   ECF 116, ¶ 10; ECF 107-6.

[8]   ECF 1-1.

[9]   ECF 1.

[10]   ECF 116, ¶¶ 11–13.

[11]   ECF 20.

(VI) Unfair Competition Under the Lanham Act; (VII) Breach of the Covenant of Good Faith and Fair Dealing;[12] and (VIII) Attorney's Fees and Expenses.[13]

Shaver moved to dismiss Counts I, III, IV, V, VI, and VIII of the Amended Complaint, arguing, as relevant here, that (1) Count I, alleging breach of contract for past commissions, should be dismissed because CAG was bound by its sworn admissions in its initial complaint and in moving for preliminary injunction that Shaver made monthly commission payments to CAG in accordance with the agreement;[14] (2) the contract terms entitling CAG to future commissions were unenforceable;[15] and (3) CAG cannot assert a claim for unjust enrichment when the parties were governed by a valid contract.[16] The Court granted the motion in part, dismissing Counts III and V.[17]

---

[12] Due to a typographical error, the claim for breach of the covenant of good faith and fair dealing is labeled as "Count VIII." The Court will refer to it as Count VII, the order in which it is listed in the Amended Complaint, to avoid confusion. ECF 22, at 16.

[13] ECF 22, ¶¶ 28–73.

[14] ECF 24-1, at 10–11.

[15] *Id.* at 11–15.

[16] ECF 29, at 12.

[17] ECF 31.

Following the Court's order, Shaver moved for reconsideration "to amplify points that Shaver made only briefly (and without robust supporting legal authority) in its Motion to Dismiss" with respect to the Court's ruling on CAG's unjust enrichment claim.[18] Specifically, Shaver sought to emphasize Georgia case law, which, according to Shaver, show that a party cannot enforce an illegal restrictive covenant or contravene Georgia public policy favoring fair trade through a claim for unjust enrichment.[19] The Court denied the motion because Shaver had not met the legal standard for reconsideration.[20]

CAG moved for partial summary judgment on Count II, for April 2018 commissions owed but not paid by Shaver.[21] The Court granted CAG's motion as to liability, but found that an issue of material fact existed as to what amount Shaver owed CAG for the April 2018 commissions.[22] Shaver has a pending motion for summary judgment as to the counts remaining in this case,[23] which include Count I for breach of contract for past commissions, Count VI for unjust

---

[18]   ECF 40, at 6.

[19]   ECF 32-1.

[20]   ECF 67.

[21]   ECF 68.

[22]   ECF 121.

[23]   ECF 107.

enrichment, Count VII for breach of the covenant of good faith and fair dealing, and Count VIII for attorney's fees and expenses,[24] as well as a pending motion to strike Count I as a sanction for discovery abuses.[25] The parties have briefed both motions.[26]

## II.     ANALYSIS

On its motion for summary judgment, Shaver first asserts that a party cannot inhibit trade or enforce an otherwise unenforceable restrictive covenant through a claim for unjust enrichment. Shaver also argues that CAG's unjust enrichment claim fails because it is premised on client contracts that do not exist and because CAG cannot prove its damages. As to CAG's breach of contract claims, Shaver argues that the entire amended supply agreement is void because of the overbroad restrictive covenants and because CAG failed to present evidence in support of these claims.

---

[24]   The parties stipulated to the dismissal of Count VI, unfair competition under the Lanham Act. ECF 101. Shaver brought three counterclaims, one of which was voluntarily withdrawn, ECF 41, one of which was dismissed by the Court, ECF 88, and one of which the parties dismissed by stipulation. ECF 101. No counterclaims remain.

[25]   ECF 102.

[26]   ECF 102; ECF 104; ECF 106; ECF 107; ECF 108; ECF 115; ECF 116; ECF 119; ECF 128.

### A.    Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A party seeking summary judgment has the burden of informing the district court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If a movant meets its burden, the party opposing summary judgment must present evidence showing either (1) a genuine issue of material fact or (2) that the movant is not entitled to judgment as a matter of law. *Id.* at 324.

In determining whether a genuine issue of material fact exists, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that party. *Anderson*, 477 U.S. at 255; *see also Herzog v. Castle Rock Entm't*, 193 F.3d 1241, 1246 (11th Cir. 1999). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the

court in evaluating summary judgment. *Anderson*, 477 U.S. at 255. *See also Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999). Summary judgment for the moving party is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B.  Discussion

#### 1.  Unjust Enrichment

Shaver argues that summary judgment is appropriate for CAG's unjust enrichment claim because (1) it is premised on client contracts that never existed; (2) an unjust enrichment claim cannot be used to enforce an otherwise unenforceable contract; and (3) CAG's damage calculation is speculative. While the Court finds that there is a question of fact as to whether the client contracts exist, it agrees with Shaver that CAG is improperly attempting to enforce the invalid restrictive covenants in the amended supply agreement through the unjust enrichment claim and that CAG's damage calculation is entirely speculative. Summary judgment is therefore warranted.

"Unjust enrichment is an equitable concept and applies when as a matter of fact there is no legal contract, but when the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the

benefitted party equitably ought to return or compensate for." *Sitterli v. Csachi*, 344 Ga. App. 671, 673 (2018). CAG claims that Shaver was unjustly enriched when it took over CAG's client contracts and continued to supply food to these clients without paying CAG a commission.

Shaver first argues that no "client contracts" exist as alleged in the Amended Complaint. The Amended Complaint defines "client contracts" as written agreements CAG entered into with its various clients to whom it provided food management services.[27] Shaver asserts that there is no evidence that CAG entered into client contracts prior to Shaver's and CAG's business relationship and that CAG is improperly broadening the scope of what is included in the client contracts. However, whether and when CAG entered into contracts with these clients and whether Shaver had independent relationships with those clients are questions of material fact, and CAG has come forward with evidence sufficient to create a dispute as to these facts.[28] In particular, CAG presented evidence that Shaver assigned CAG customers to Shaver's sale managers after the two entities entered into the supply agreement and that Shaver internally labeled certain

---

[27]   ECF 22, ¶¶ 6–7.

[28]   ECF 115, at 6–11.

clients as CAG's.[29] Because the Court finds that a question of fact exists regarding CAG's client contracts, CAG's proposed surreply is unnecessary to the extent it seeks to reinforce this position.[30]

Shaver's next argument is more compelling. It contends, citing *JR Construction/Electric, LLC v. Ordner Construction Co.*, 294 Ga. App. 453, 455 (2008), that Georgia case law and public policy prohibit enforcement of void restrictive covenants through claims for unjust enrichment. In *JR Construction*, the Georgia Court of Appeals affirmed summary judgment against a contractor on its claims for breach of contract and unjust enrichment because the underlying contract violated public policy and the unjust enrichment claim was brought to enforce the same terms. *Id.* at 455–56. In particular, the court held that the contractor could not "recover the value of goods and services provided under a theory of unjust enrichment or quantum meruit" because "[i]f, as in this case, an express agreement is unenforceable because it violates public policy, the agreement '[cannot] be made legal and binding as an implied contract, by merely praying for a recovery on quantum meruit of a portion of the amount expressly agreed upon. If the express

---

[29]   ECF 115, at 10.

[30]   ECF 129, at 3–4.

contract was void because contrary to public policy, the implied promise was void in its inception.'" *Id.* at 455. (quoting *Sapp v. Davids*, 176 Ga. 265, 267–68 (1933)).

For example, as in *Hilb, Rogal & Hamilton Co. of Atlanta v. Holley*, 295 Ga. App. 54, 56 (2008), *disapproved of on other grounds by Rockdale Hospital, LLC v. Evans*, 306 Ga. 847, 834 (2019), an employer cannot claim that an employee was unjustly enriched "by the separate consideration paid to him in exchange for the unenforceable covenant not to compete," particularly where the equitable relief is sought by the employer seeking to benefit from the illegal restraint of trade. 295 Ga. App. at 56. This reasoning prohibits recovering not only past consideration, but also future commissions, as Georgia law prohibits royalty or commission payments extending beyond the life of the contract where it acts as a restraint on trade. *Smith Adcock & Co. v. Rosenbohm*, 238 Ga. App. 281, 282 (1999) (affirming holding that royalty provision in employment contract was invalid because it had no territorial limit and therefore violated Georgia law).

CAG concedes that the restrictive covenants in the amended supply agreement are invalid.[31] Indeed, the restrictions provide no temporal or territorial limitation and would prohibit Shaver from ever soliciting or accepting solicitations from CAG's clients.[32] CAG argues, however, that the claim for unjust enrichment is entirely separate from the contract and stems from Shaver "stepping into" CAG's place and continuing relationships with CAG's clients.[33] Yet this is entirely what the restrictive covenants sought to prevent, and so CAG is improperly attempting to enforce an implied promise that "was void in its inception." *JR Constr.*, 294 Ga. App. at 455. In fact, CAG stated at oral argument that the damages

---

[31]  At oral argument, counsel for CAG stated that the Court previously concluded that the covenants are invalid and that CAG will accept this determination for purposes of this litigation, but the Court did not make this determination on CAG's motion for preliminary injunction or on Shaver's motion to dismiss. ECF 20 (order on preliminary injunction); ECF 23 (transcript of preliminary injunction hearing); ECF 31 (order on motion to dismiss). The Court, nevertheless, takes counsel's statement as a concession.

[32]  ECF 107-2.

[33]  CAG claims that the Court has already ruled that the unjust enrichment claim can stand on its own. This is inaccurate. On Shaver's motion to dismiss, the Court found that an unjust enrichment claim can proceed in the alternative where a breach of contract claim fails a matter of law, which it did here because the contract was terminable at will. ECF 31, at 10. Shaver did not argue that the illegality of the restrictive covenants negates the unjust enrichment claim on its motion to dismiss. The Court also did not reach the merits of this argument on Shaver's motion for reconsideration because Shaver failed to meet the standard for reconsideration. ECF 67.

it seeks, the five percent commission to which it believes it is entitled from Shaver in perpetuity, is what Shaver bargained for, further demonstrating that CAG's unjust enrichment claim is an end-run around the void restrictive covenants. Worse still, as counsel for Shaver noted at oral argument, if CAG's unjust enrichment goes forward as is, the Court would be permitting CAG to recover on restrictions without temporal or territorial limits—in other words, more than it would be allowed if it had a valid restrictive covenant in its contract with Shaver. The Court cannot allow this perverse incentive to stand.

The Court also agrees with Shaver that CAG has failed to present a legally sufficient calculation of damages. CAG admits that it has not determined a damages amount that it will present to the jury because "damages are ongoing," but has stated that its damages would be five percent of the amounts invoiced by Shaver to clients procured through CAG for as long as those clients are served by Shaver.[34] The five percent calculation comes from the five percent commission contemplated in the amended supply agreement.[35]

CAG improperly calculates its damages on the amount *it would have made* under the amended supply agreement. "The measure of damages under quantum

---

[34]   ECF 115, at 16–17.

[35]   ECF 107-2.

meruit or unjust enrichment is based upon the benefit conferred upon the defendant and not upon the cost to render the service or cost of the goods." *Zampatti v. Tradebank Int'l Franchising Corp.*, 235 Ga. App. 333, 340 (1998). Indeed, the "[v]alue of services is not to be determined from the perspective of the party rendering the services and materials, but must be determined from the perspective of the recipient to determine to what extent the party was benefited or enriched by such services; otherwise, ineffective, defective, or worthless services could create liability for the recipient." *Watson v. Sierra Contracting Corp.*, 226 Ga. App. 21, 28 (1997). Thus, the value CAG placed on its efforts to foster relationships with these clients is inapposite. The fact finder must determine the value, if any, of the benefit conferred on Shaver. CAG has not presented any evidence of this value.[36]

While "[t]he value of services from the perspective of the recipient is uniquely that of opinion and is for jury determination," *id.*, it would be error to submit a question of damages to the jury "if, to make an award, the jury must

---

[36] CAG makes much of the fact that Shaver has in its possession all the information and data needed to calculate damages. As the Court emphasized at oral argument, it is CAG's burden, not Shaver's, to prove damages. *Lay Bros. v. Golden Pantry Food Stores, Inc.*, 273 Ga. App. 870, 874 (2005) ("The party claiming damages carries not only the burden of proving the damages, but also furnishing the jury with sufficient data to estimate the damages with reasonable certainty.").

engage in sheer speculation." *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1492, 1507 (11th Cir. 1985). "Where a party sues for damages, he has the burden of proof of showing the amount of loss in a manner in which the jury or the trial judge in nonjury cases can calculate the amount of the loss with a reasonable degree of certainty." *Accessory Overhaul Grp., Inc. v. Mesa Airlines, Inc.*, 994 F. Supp. 2d 1296, 1306 (N.D. Ga. 2014) (quoting *Big Builder, Inc. v. Evans*, 126 Ga. App. 457, 458 (1972)). Particularly as to claims for equitable damages "[t]he mere fact that a party failed to perform as required or expected standing alone does not furnish a basis upon which the amount of the loss can be calculated. An allowance for damages cannot be based on guess work." *Id.* (internal citations and punctuation omitted). "Thus, at the summary-judgment stage, reasonable inferences to be drawn from [the claimant's] evidence of damages 'cannot be based on mere conjecture or possibility or upon evidence which is too uncertain or speculative.' The plaintiff must furnish sufficient data to estimate its damages with reasonable certainty." *Id.* (internal citations omitted) (quoting *Hoffman v. AC & S, Inc.*, 248 Ga. App. 608, 610 (2001) and *Moultrie Farm Ctr. v. Sparkman*, 171 Ga. App. 736, 740 (1984)).

*Accessory Overhaul* is analogous to this case. There, the plaintiff, in calculating its damages for quantum meruit and unjust enrichment, relied on a provision in an unenforceable contract. *Id.* at 1307. The Court found that the

contract provision did "not represent the benefit conferred upon Defendants," but instead focused on "the cost" to the plaintiffs and, because the plaintiffs failed to present another more accurate measure of damages, it failed to "carr[y] its burden of providing evidence sufficient to calculate its equitable damages with reasonable certainty," and summary judgment was warranted. *See also Prose Fin. Servs., LLC v. Welding Techs., Inc.*, No. 1:06-CV-501-ODE, 2007 WL 9701670, at *7 (N.D. Ga. Aug. 3, 2007) (granting summary judgment where the plaintiff failed to provide any value of services beyond bare assertions). The same is true here. CAG failed to present an accurate measure of the value of the benefit conferred on Shaver. Projecting a five percent commission for an unspecified number of clients for an undetermined period is also pure conjecture. For this additional reason, summary judgment is warranted on CAG's unjust enrichment claim.

### 2. Breach of Contract

Shaver argues that it is entitled to summary judgment on CAG's remaining breach of contract claims (Counts I, II, VIII) because CAG has failed to present evidence of a breach; the amended supply agreement contains an illegal restrictive covenant that voids the entire agreement; and CAG has not proven damages. The

Court has already found summary judgment proper as to Count II in favor of CAG,[37] and so this motion is only appropriate as to Counts I and VIII.

First, the Court finds that the restrictive covenant terms are severable. In determining whether a contract is severable, the Court considers the parties' intent, which "may be expressed directly, through a severability clause, or indirectly, as when the contract contains promises to do several things based upon multiple considerations." *Grayhawk Homes, Inc. v. Addison*, 355 Ga. App. 612, 616 (2020). The amended supply agreement contains multiple promises and multiple considerations. Specifically, the provision giving CAG a five-percent commission on sales from Shaver to CAG's clients was in exchange for Shaver being "the primary supplier of all foodservice food and food related products."[38] In addition to this exchange of promises, Shaver agreed to "protect the relationship of CAG and its clients" in exchange for being CAG's primary supplier, and in doing so agreed to the restrictive covenants.[39] The agreement also provides that "[n]o change to any part of this agreement shall invalidate other parts of this agreement

---

[37]   ECF 121.

[38]   ECF 107-2.

[39]   *Id.*

not specifically addressed," which evidences the parties' intent to make the provisions severable.[40]

CAG has not, however, presented evidence in support of its breach of contract claim for past commissions. In particular, CAG has not shown what amount Shaver was paid by CAG's clients and that Shaver failed to pay CAG five percent of that amount. CAG has only presented records showing the amount Shaver invoiced to its clients and claims that it was owed five percent on each amount invoiced.[41] Any amount less than that five percent, according to CAG, is in breach of the contract. But that is not what the contract says. The amended supply agreement provides that CAG "will receive a commission of 5% of the total amount paid for each future invoice by a client managed by [CAG]."[42] To recover on a breach of contract claim, therefore, CAG must show that Shaver failed to pay

---

[40]   *Id.*

[41]   ECF 115, at 18 ("In support of Count I for these past commissions, CAG produced to Shaver six hundred and ninety-two (692) pages of supporting documentation and calculations which demonstrate to the penny the total amount CAG has been damaged ($590,216.72). These calculations include the customer name, order ID, order date, order total, invoice ID, *type of invoice, invoice total, commission paid*, and contractual commission owed.") (emphasis added).

[42]   ECF 107-2, at 2.

CAG five percent on the amounts Shaver was *paid* by the clients, not that Shaver

failed to pay five percent on the amounts Shaver *invoiced*.

Instead of offering evidence in support of Shaver failing to pay five percent

on the amount it was paid, CAG argues that the parties' course of dealing shows

that they interpreted the contract term to mean amount invoiced. To consider the

parties' course of dealing, the Court must first determine whether the amended

supply agreement is ambiguous. Under Georgia law,

> [t]he construction of contracts involves three steps. At
> least initially, construction is a matter of law for the
> court. First, the trial court must decide whether the
> language is clear and unambiguous. If it is, the court
> simply enforces the contract according to its clear terms;
> the contract alone is looked to for its meaning. Next, if
> the contract is ambiguous in some respect, the court must
> apply the rules of contract construction to resolve the
> ambiguity. Finally, if the ambiguity remains after
> applying the rules of construction, the issue of what the
> ambiguous language means and what the parties
> intended must be resolved by a jury. The existence or
> nonexistence of an ambiguity is a question of law for the
> court. If the court determines that an ambiguity exists,
> however, a jury question does not automatically arise,
> but rather the court must first attempt to resolve the
> ambiguity by applying the rules of construction in
> O.C.G.A. § 13–2–2.

*Gates v. TF Final Mile, LLC*, No. 1:16-CV-0341-RWS, 2020 WL 2026987, at *6

(N.D. Ga. Apr. 27, 2020) (quoting *Barrett v. Britt*, 319 Ga. App. 118, 122 (2012)).

Only after determining that an ambiguity exists, may a court consider "the parties'

subjective intent, or of a prior course of dealings." *Kleiner v. First Nat. Bank of Atlanta*, 97 F.R.D. 683, 693 (N.D. Ga. 1983).

Neither party has suggested that the amended supply agreement is ambiguous, and, indeed, the plain meaning is clear—Shaver owed CAG five-percent commission on the amount CAG customers *paid* to Shaver. This is also clear from the pleadings. The Amended Complaint states that Shaver "was required to pay [CAG] five percent (5%) of the total amount paid for 'each future invoice' for [CAG]'s Clients" and alleges breach of contract because Shaver failed to pay "the full amount of commissions due and owing."[43] Nowhere in the Amended Complaint does CAG claim that the parties understood the contract to mean Shaver owed CAG five percent on the amount invoiced. Further, CAG has admitted that the proper construction of the amended supply agreement is the commission owed on amounts actually paid.[44]

Interpreting the contract as written, CAG has not presented evidence that Shaver failed to pay CAG a five-percent commission on amounts paid to Shaver by CAG clients. Therefore, summary judgment is warranted on Count I of CAG's amended complaint, alleging breach of contract for past commissions.

---

[43]   ECF 22, ¶¶ 15, 30.

[44]   ECF 116, ¶ 31.

CAG's proposed surreply would not alter this finding. In its motion for leave to file surreply, CAG argues the reason it relied on the commission reports in calculating its damages, which show the invoiced amount, is because that is what Shaver produced in response to CAG's damages discovery requests. But the email correspondence attached to CAG's motion plainly shows that Shaver produced all of its records, including what it was paid by clients, and Shaver *tells* CAG that the invoice amount is irrelevant, stating that "Shaver has produced thousands and thousands of pages containing exactly the information you have required, which include credit, payment, and billing information . . . the actual 'invoices' sent to customers often vary substantially."[45] Even so, whatever Shaver told CAG in discovery regarding the calculation of damages doesn't change what the contract says. For this reason, and for the reason noted above regarding the client contract evidence, the Court denies CAG's motion for leave to file a surreply.

Since dismissal is appropriate on Count I, Shaver's motion to strike this claim is moot. At oral argument, Shaver suggested it would seek attorneys' fees on the same grounds if the Court granted summary judgment. If Shaver wishes to seek attorneys' fees as a sanction, it may file a separate motion making this request.

---

[45]   ECF 129-1, at 2.

The Court takes no position at this time on whether such a motion, if filed, will be granted.

## III.   CONCLUSION

Shaver's motion for summary judgment [ECF 107] is **GRANTED** and its motion to strike [ECF 102] is **DENIED as moot**. CAG's motion for leave to file surreply [ECF 129] is **DENIED**. Counts I and IV of the Amended Complaint are **DISMISSED**. The stay entered pursuant to the Courts September 24, 2020 order is **LIFTED**. A fact question remains as to the proper measure of damages on CAG's Count II and the dependent Count VII, for breach of the covenant of good faith and fair dealing. Count VIII, for attorney's fees and expenses, also remains viable as to the surviving claims. Within 30 days of entry of this Order, the parties shall file a proposed Consolidated Pretrial Order.

**SO ORDERED** this the 17th day of March 2021.

Steven D. Grimberg
United States District Court Judge